## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IVAN TODYRENCHUK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     Case No. CIV-26-1243-J |
| | ) |
| WARDEN OF DIAMONDBACK | ) |
| CORRECTIONAL FACILITY, et al., | ) |
| | ) |
| Respondents.[1] | ) |

## REPORT AND RECOMMENDATION

Petitioner Ivan Todyrenchuk, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 6.[3] United States District Judge Bernard M. Jones, II referred the case to the undersigned Magistrate Judge for initial

---

[1]    Warden Fred Figueroa is not a federal official, and the Government did not file a response on his behalf. Doc. 10, at 1 n.1.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    The amended petition supersedes the original petition as the operative pleading. *Cf. Davis v. TXO Prod. Corp.,* 929 F.2d 1515, 1517 (10th Cir. 1991) ("[A]n amended complaint ordinarily supersedes the original and renders it of no legal effect.").

proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3.[4] The Government responded, Doc. 10, and Petitioner replied, Doc. 11. So, the matter is at issue.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition in part and order Respondents to immediately release Petitioner subject to the same conditions of his earlier parole.

## I.    Factual background and Petitioner's claims.

Petitioner is a citizen of Ukraine. Doc. 6, at 4; Doc. 10, at 4. On February 9, 2023, he arrived at the Los Angeles International Airport, where he was admitted into the United States as a Ukrainian Humanitarian Parolee for a two-year period. Doc. 6, at 4, 14; Doc. 10, at 4-5. On August 12, 2024, United States Citizenship and Immigration Services (USCIS) extended Petitioner's parole until February 7, 2027. Doc. 10, at 5 (citing Ex. 3). On April 11, 2025, Petitioner sought Temporary Protected Status (TPS), which remains pending. Doc. 6, at 5, 16-29.

On May 6, 2026, Petitioner was lawfully working as a truck driver and driving through Oklahoma when he was stopped by Craig County law enforcement officers. Doc. 10, at 5 (citing Ex. 5); Doc. 6, at 6, 30-31. The next

---

[4]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

day, he was placed in Immigration & Customs Enforcement (ICE) custody at the Diamondback Correctional Facility, where he remains detained. Doc. 6, at 6.

On May 7, 2026, the Department of Homeland Security (DHS) issued Petitioner a Notice to Appear (NTA), charging him as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA),[5] and placed him into removal proceedings under 8 U.S.C. § 1229a. Doc. 10, at 5 (citing Exs. 1, 6-7). Respondents maintain that the NTA revoked Petitioner's parole. *Id.* at 6.

Petitioner sought a redetermination of his custody status, and the Immigration Court (IC) denied Petitioner's request, citing a lack of jurisdiction. *Id.* (citing Exs. 8-9).

Petitioner argues that Respondents violated 8 U.S.C. § 1254a because the Immigration Judge (IJ) failed to consider the prima facie showing of his TPS. Doc. 6, at 8-9. He also argues that Respondents denied him his Fifth

---

[5] This section is codified in the United States Code at 8 U.S.C. § 1182(a)(7)(A)(i)(I). This section provides that a noncitizen, who at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. *Id.* § 1182(a)(7)(A)(i)(I).

Amendment right to due process because he has received no individualized redetermination of his custody status. *Id.* at 9-10. He also states his detention violates the Administrative Procedure Act (APA), without further elaboration. *Id.* at 8.[6]

Petitioner asks this Court to issue a show cause order as to why relief should not be granted in three days; issue an order not to transfer him outside this district without the Court's approval;[7] declare that his re-detention without an individualized determination violates the Due Process Clause of the Fifth Amendment; issue a writ of habeas corpus ordering Respondents to immediately release him; and award him attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, and on any other basis justified under law. *Id.* at 10-11.

## II.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of

---

[6]    To the extent that Petitioner raises an APA claim, the undersigned finds the Court lacks jurisdiction to consider it in this habeas proceeding. The APA does not supply an independent vehicle to challenge the fact or duration of immigration detention. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); 5 U.S.C. § 701(a).

[7]    The Court addressed Petitioner's request in part in its Order for Response, Doc. 8, where it ordered Respondents to provide 72-hour advance notice of any intended movement of Petitioner's person.

the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III.    Discussion.

### A.    Petitioner's TPS claim.

Section 1254a(a) authorizes the DHS Secretary[8] to grant noncitizens "from countries experiencing conditions that make it unsafe or impossible for their citizens to return home," TPS status. *Gonzalez v. Casey,* 2026 WL 1333767, at *2 (S.D. Cal. May 13, 2026) (citing 8 U.S.C. § 1254a(a)); *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021) (noting TPS program was established to "provide humanitarian relief to foreign nationals in the United States who come from specified countries").

Granting a noncitizen TPS bars the Government from removing them

---

[8]    "Section 1254a originally granted this authority to the Attorney General, who subsequently delegated it to the Secretary of DHS." *Granadillo-Arambule v. Daley*, 2026 WL 1157161, at *1 n.1 (E.D. Ky. Apr. 29, 2026).

"from the United States during the period in which such status is in effect," and allows the noncitizen to "engage in employment in the United States." 8 U.S.C. § 1254a(a)(1)(A)-(B).

The initial effectiveness period of a country designated TPS "take[s] effect upon the date of publication of the designation" and lasts "not less than 6 months and not more than 18 months." *Id.* § 1254a(b)(2). The Secretary must review the conditions in the designated country "[a]t least 60 days before the end of the initial period." *Id.* § 1254a(b)(3)(A). And, if the Secretary "determines . . . that a foreign state . . . no longer continues to meet the conditions for designation . . . [the Secretary] shall terminate the designation by publishing notice in the Federal Register." *Id.* § 1254a(b)(3)(B). The Secretary may also extend "the period of designation . . . for an additional . . . 6 months (or, in the discretion of the [Secretary], a period of 12 or 18 months)." *Id.* And "[t]o be eligible for TPS, a particular noncitizen must be continuously present in the United States since the effective date of the most recent designation of his or her country of origin, must have continuously resided in the United States since such date, must be admissible as an immigrant, and must have timely applied for TPS during the registration period." *Granadillo-Arambule,* 2026 WL 1157161, at *1.

"[A] TPS recipient is 'considered as being in, and maintaining, lawful

6

status as a nonimmigrant' for the purpose of becoming [a legal permanent resident]." *Sanchez*, 593 U.S. at 412 (quoting 8 U.S.C. § 1254a(f)(4)). Relevant authorities "shall not remove the [noncitizen] from the United States during the period in which [TPS] is in effect." 8 U.S.C. § 1254a(a)(1)(A). Likewise, 8 U.S.C. § 1254a(d)(4), as part of the subsection related to documentation of TPS, provides that a non-citizen with TPS "shall not be detained by the Attorney General on the basis of the [noncitizen]'s immigration status in the United States." *Id.* § 1254a(d)(4).

Petitioner is a citizen of Ukraine, a TPS designated country.[9] He contends that because he is prima facie eligible for TPS, he is entitled to the benefits of TPS while his application is pending and therefore cannot be detained. *See* Doc. 6, at 6, 8-9 (citing 8 U.S.C. § 1254a(d)(4)). Respondents contest Petitioner's position for several reasons. First, they argue that § 1254a(a)(1) does not prohibit detention at this point in the TPS process (i.e., where the TPS application is pending but has not yet been granted). Doc. 10, at 6-7. Respondents also argue that the initial grant of TPS is entirely

---

[9]     According to USCIS, Ukraine is designated for TPS status through October 19, 2026. *See* USCIS, Temporary Protected Status Designated Country: Ukraine, https://www.uscis.gov/humanitarian/temporary-protected-status/TPS-Ukraine (last visited July 22, 2026).

discretionary, and as an arriving alien, Petitioner is subject to 8 U.S.C. § 1225(b). *Id.*[10]

Petitioner has provided no evidence to support his assertion that it is the role of this Court to determine whether he has established prima facie eligibility for the TPS program. Neither the statute nor its accompanying regulations specify when or how an alien is expected to "establish a prima facie case of eligibility for benefits." *Osman v. Schmidt*, 2025 WL 870048, at *2 (E.D. Wis. Mar. 20, 2025); *see also Ali v. Williams*, 2025 WL 3092776, at *3-4 (W.D. La. July 29, 2025). "[N]othing in the text or history of the statute or the structure immigration law [sic] generally suggests that prima facie eligibility is a determination for a federal district court." *Osman,* 2025 WL 870048, at *2. Instead, "as embodied in the exhaustion doctrine, the assumption is that matters are first addressed administratively." *Id.* (internal citations omitted).

---

[10]    Section 1225(b)(1)(a)(i) provides that "[i]f an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).  Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A).

Thus, the Court is unable to determine Petitioner's prima facie eligibility for TPS. This responsibility instead lies with the appropriate agency. *Id.*

### B.    Petitioner is entitled to due process.

Petitioner next claims that his ongoing detention without a custody review hearing violates his rights under the Due Process Clause of the Fifth Amendment. Doc. 6, at 9-10. To the extent Respondents substantively address Petitioner's statutory and procedural due process arguments, they assert that Petitioner is properly detained under 8 U.S.C. § 1225(b)(1) as an arriving alien at a port of entry. Doc. 10, at 11-14. Additionally, they argue Petitioner's reference to *Zadvydas* is inapposite as Petitioner does not have a final order of removal. *Id.* at 12.

Under § 1225(b)(1)(A)(i), "[i]f an immigration officer determines that [the noncitizen] . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) . . ., the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C.

§ 1182(d)(5)(A)); *see also* 8 U.S.C. § 1182(d)(5)(A) (granting discretion to DHS officials to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States").

The parties agree Petitioner was paroled under § 1182(d)(5)(A) after arriving at the border and that USCIS extended his parole until February 7, 2027. Doc. 10, at 5; Doc. 6, at 5.

Petitioner argues there was no reason to re-detain him and ICE violated the INA and his due process rights when it arbitrarily revoked his humanitarian parole. Doc. 6, at 9-10. The Court should agree with Petitioner.

Because Petitioner was released on humanitarian parole, "it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *See Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) (internal quotation marks omitted). Still, even if the Court assumed Petitioner was subject to mandatory detention upon termination of his parole through the post-hoc issuance of the NTA, Doc. 10, at 6, "Respondents must still comply with the requirements of due process." *E-D-S-O- v. Hernandez*, 2026 WL 1067036, at *3 (W.D. Wash. Apr. 20, 2026); *cf.*

10

*Qasemi v. Francis,* 2025 WL 3654098, at \*7 (S.D.N.Y. Dec. 17, 2025) ("[A] noncitizen paroled into the country—i.e., a noncitizen residing in the United States—is not an arriving alien.").

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.,* 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the Government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing

11

immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99.

### 1.    Statutory and regulatory framework.

Section 1182(d)(5) grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [they] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Any revocation of this parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And the parole will be terminated only when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

Respondents state that "ICE . . . counsel has advised [them] that service of the NTA terminated Petitioner's parole." Doc. 10, at 6.  So, they maintain that any liberty interest Petitioner possessed automatically terminated when his parole terminated. *Id.* at 11. As a result, Respondents argue they are lawfully detaining Petitioner under § 1225(b)(1). *Id.*

The Court rejects Respondents' argument that the issuance of an NTA to Petitioner caused his detention to revert to the custody status that governed his original detention. Section 1182(d)(5)(A) "does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi*, 2025 WL 3654098, at *10. Rather, the statute states that, following the expiration of parole, the noncitizen shall (1) "forthwith return or be returned to the custody from which he was paroled" and (2) "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

Section 1182(d)(5)(A) "recognizes that the parole physically happened, because it contemplates that the noncitizen must be returned to detention." *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 86 (D.D.C. 2025). Because § 1182(d)(5)(A) recognizes that noncitizens paroled under its authority are released into the United States, it is not logical then to assume they revert to mandatory detention under § 1225(b)(1) as an arriving alien. Especially given that § 1182(d)(5)(A) itself does not state that a noncitizen reverts to the status he or she possessed before the grant of parole.

In fact, § "1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has [been terminated] is treated like the vast

13

majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025). The Court finds that § 1182(d)(5)(A) does not require Petitioner to be detained under the same statutory status as his original detention.

### 2. Respondents violated Petitioner's due process rights by summarily revoking his parole.

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

14

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). DHS deprived Petitioner of his freedom when it re-detained him.

Turning to the *Mathews* factors, the Court finds Petitioner has a significant private interest in remaining free from detention after spending over three years on parole. By initially releasing Petitioner on parole, the Government necessarily determined that he was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner

to remain at liberty for three years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in continued liberty grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where ICE took him into custody without any notice of the reason or a pre-deprivation hearing.[11]

---

[11]     "Under the governing regulation, humanitarian parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole." *Arias v. Larose,* 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. § 212.5(e)).

16

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. This factor weighs in Petitioner's favor. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

---

Respondents maintain that the issuance of the NTA terminated Petitioner's parole, but even if the NTA "was written notice, . . . Respondents still fail[] to demonstrate that the purpose of [Petitioner's] was served or that humanitarian reasons and public benefit do not warrant parole." *Id.* The lack of an individualized determination by DHS violated the agency's regulations governing termination of parole. *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of Munoz Materano's parole; nor do they articulate, even now, either that the purpose for which Munoz Materano's parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

17

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without any determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). This is especially true given that Petitioner's detention was not considered necessary for three years.

## C.    Remedy.

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103,

18

107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release.") (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir.1990)).

The undersigned finds that ICE violated Petitioner's due process rights when it summarily revoked his parole. Based on these findings, the undersigned recommends the Court grant the habeas corpus petition in part and order Respondents to release Petitioner from detention subject to the same conditions of his earlier parole. Numerous courts across the country have ordered immediate release in similar circumstances.[12]

---

[12]    *See, e.g.*, *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo v. Brooksby,* 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026) (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D.

## IV.   Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition in part and **order his immediate release subject to the same conditions that governed his earlier parole. The undersigned also recommends that the Court order the Government to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to counsel for the Warden of the Diamondback Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.[13]

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 27, 2026,

---

Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

[13]   As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

20

in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[14] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

      **ENTERED** this 22nd day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[14]     Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").